T.C. Memo. 2006-193

UNITED STATES TAX COURT

KAI H. and SUSANNA LEE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

ULYSSES K. and JANE LEE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 16601-04, 16602-04.    Filed September 11, 2006.

<u>Roger Adams</u>, for petitioners.

<u>John D. Faucher</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

HOLMES, <u>Judge</u>:  In 1999 and 2000, Ulysses Lee was a full-time employee of the IRS; his brother, Kai, worked as a doctor and professor and ran several other businesses.  One of these businesses was Lee Brothers Investments, a real estate investment

partnership that Kai and Ulysses ran together and which owned a house and two small apartment buildings.  In 1999 and 2000, Lee Brothers Investments and the brothers' other real estate investments ran up big, albeit noncash, losses.  The Commissioner argues that these losses were passive, and so may not be used by the Lees to offset their other income.

## FINDINGS OF FACT

The Lee brothers were born in China, and moved to Honolulu in 1961.  Both later moved to the mainland (they were California residents when they filed their petitions) and started families of their own.  The Lees are well educated:  Ulysses earned a bachelor's degree in accounting and a master's in business administration.  Kai earned bachelor's and master's degrees in nuclear engineering, and another master's degree and a doctorate in medical physics.

During 1999 and 2000, Kai worked full time as a professor of radiology under a joint appointment at the University of Southern California and the Los Angeles County Medical Center.  Kai also co-owned and operated (beginning in 2000) 101 Positron Emission Tomography Management Services LLC, a medical diagnostic facility; Kai Lee, Ph.D., Inc., a consulting service; and invested in a few real estate ventures with members of his family.  Ulysses Lee was a full-time examiner at the IRS, and he also invested in real estate.

The brothers are equal partners in Lee Brothers Investments, a partnership that owned three rental properties--one single-family home and a five-unit apartment building in southern California, and another small apartment building in Hawaii. Outside this partnership, Kai Lee owns three other rental properties (two single-family homes and a three-unit apartment building); and Ulysses owns one other rental property, a four-unit apartment building. These properties produced losses, largely from depreciation, which the Lees reported on their returns.

The Commissioner disallowed the losses, and added accuracy-related penalties to the resulting deficiencies, for both years and both brothers. The Lees filed timely petitions, and the cases were consolidated and tried together in Los Angeles.

OPINION

A. Passive Activity Losses

The focus of the trial was on whether the challenged losses were deductible. The Code allows taxpayers to deduct most business and investment expenses under sections 162 and 212;[1] however, section 469 limits these deductions when they arise from "passive" activities. Section 469(c)(2) defines passive

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code as in effect for the years at issue, and the Rule reference is to the Tax Court Rules of Practice and Procedure.

activities as including rental activities.  The notice of
deficiency that the Commissioner sent the Lees disallowed their
losses from Lee Brothers Investments and their other real estate
ventures because the Commissioner concluded that they were all
"rental real estate activities," and so *per se* passive.  The
Commissioner also reduced the size of the depreciation expenses
that the Lees had taken on two of their properties, because they
had used a 10-year useful life rather than the 27.5-year life
clearly required by law.  The Lees had no good reason for having
done this, and conceded the issue before trial.

The trial focused on whether the brothers' work on their
rental real estate qualified them for an exception to the Code's
characterization of rental activities as passive.  The exception
that they aimed for is section 469(c)(7)(B), and it applies if:

> (i) more than one-half of the personal
> services performed in trades or businesses by
> the taxpayer during such taxable year are
> performed in real property trades or
> businesses in which the taxpayer materially
> participates, and
>
> (ii) such taxpayer performs more than
> 750 hours of services during the taxable year
> in real property trades or businesses in
> which the taxpayer materially participates.
>
> In the case of a joint return, the requirements of the
> preceding sentence are satisfied if and only if either
> spouse separately satisfies such requirements. * * *

There are a few elements to this exception about which there
is no dispute.  First, for both years and in both cases, this

exception will either be met or not by the services performed by the brothers themselves--both filed joint returns, but their wives did no work in the real estate business. And there is likewise no dispute that Lee Brothers Investments and their other properties qualify as a "real property trade or business"-- renting to tenants is included in the statutory definition of the term. See sec. 469(c)(7)(C). Finally, we assume that both the brothers Lee were "material participants" in their real estate ventures.

That distills the case into one that turns on a single issue --whether or not each Lee brother worked more than half his total time providing "personal services performed in trades or businesses" on their real estate business.

The burden of proof on this issue lies with the Lees.[2] The method of proof, set out in section 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988), is quite lenient, letting taxpayers prove their time spent by "any reasonable means." Reasonable means are not limited to "Contemporaneous daily time reports, logs, or similar documents,"

---

[2] The Lees argued that the burden of proof should be shifted to the Commissioner under section 7491. We find, however, that they failed to cooperate fully with the IRS during the audit and IRS appeals process by failing to cooperate with the IRS's reasonable requests for information, interviews, and documents. See sec. 7491(a)(2)(B). We also decide this case after weighing the evidence, using a preponderance-of-the-evidence standard, not on the basis of the initial allocation of proof.

but include "the identification of services performed over a period of time and the approximate number of hours spent performing such services during such period, based on appointment books, calendars, or narrative summaries."  Id.; see Mowafi v. Commissioner, T.C. Memo. 2001-111.  But despite its apparent leniency, this section of the regulations does not require us to believe a "ballpark guesstimate" of the time spent on different activities.  Carlstedt v. Commissioner, T.C. Memo. 1997-331; Speer v. Commissioner, T.C. Memo. 1996-323; Goshorn v. Commissioner, T.C. Memo. 1993-578.

The Lees tried to prove their cases with time logs.  These were not contemporaneous logs, though, but reconstructions based on each brother's personal experience and a smattering of the partnership's records from 1999 and 2000.  According to the Lees, they worked enormously long hours on their real estate business.  Kai claimed to rack up 2,087 hours in 1999 and 2,226 hours in 2000.  And Ulysses worked only a little less--reporting on his logs that he spent 2,063 hours in 1999 and 2,102 hours in 2000, working with his brother on these small properties.

We do not find these logs, or the testimony accompanying them, credible.  The credibility problems begin with the fact, which we already noted, that both brothers had full-time salaried jobs during 1999 and 2000--Kai as a professor of radiology, and Ulysses as an IRS examiner.  Kai also worked for his own

corporation as a consultant; and in 2000 founded, and began working for, 101 Positron.

The credibility problems grew when the Commissioner introduced time logs that each brother produced to the IRS during audit and pretrial preparation.  Kai submitted his first 1999 log at his appeals conference with the IRS; Ulysses produced logs for both years at his IRS audit.  A side-by-side comparison shows:

|         | First log to IRS | Log introduced at trial |
|---------|------------------|-------------------------|
| Kai     | 1999 – 1125      | 1999 – 2087             |
|         | 2000 – N/A       | 2000 – 2226             |
| Ulysses | 1999 – 994       | 1999 – 2063             |
|         | 2000 – 875       | 2000 – 2102             |

If the brothers are to be believed, they each discovered more than a thousand missing hours for each year between the time of the audit and the time of trial.  But the logs introduced at trial are packed with too much exaggeration to be believed.  Here are a few examples from Ulysses':

- **!** 280 hours each year to close the books and prepare information about the partnership for he and his brother to use in completing their tax returns.

- **!** 80 hours in 2000 preparing for an IRS audit because the partnership's records were in such disarray, despite his 280 hours of work in closing the books.  (The audit of the 2000 returns, of course, did not actually take place in 2000.)

- **!** 24 hours to replace four miniblinds in one of the apartments, 42 hours to paint another, and 56 hours to install a new toilet in a third.

And here are a few from Kai's:

!     186 hours in 1999 to show a single vacant apartment to
      prospective tenants.

!     200 hours of answering calls from prospective tenants
      in both years.

!     48-50 hours to wrap coins from laundry machines in one
      of the apartment buildings.

But because the brothers had to show not only the time they
spent on partnership business, but that it was greater than the
time they spent on other jobs, the exaggeration in their logs of
real estate work was matched by understatements of time spent at
their full-time jobs.  Ulysses calculated his hours spent working
for the IRS by deducting his sick leave and vacation from a full-
time schedule.  But the Commissioner introduced time and
attendance records from the IRS, showing that Ulysses hadn't used
all his available sick and annual leave.  This forced him to take
the dubious position that he routinely filled in his own time-
and-attendance records inaccurately.

Kai Lee's testimony on this point was no better.  He swore
that he worked for the corporation that he owned--a corporation
that produced more than $60,000 in gross receipts for both years
--only 37 hours in 1999, and 3 hours in 2000.  He likewise
claimed to have spent only 135 hours working for 101 Positron
(the diagnostic facility that he owned and operated).  But when,
during the exam process, he argued that 101 Positron was not a
passive activity, he told the appeals officer that he spent "at

least 20 hours each week" on that job. (And he must have been convincing--the Commissioner conceded this issue.)

The credibility of the brothers' testimony was undermined even when it touched on other areas. For instance, when asked on cross-examination whether he knew anything about what an IRS appeals officer does, Kai Lee responded: "I don't know any IRS people." His brother Ulysses, who had just retired from his career as an IRS examiner, was sitting at petitioners' table with him at the time.

We conclude from all this that the Lee brothers' claims about the number of hours they worked are not credible. They are nothing more than "post-event ballpark guesstimates," and in these cases, not really in the ballpark at all. We must find neither Lee met the test for either year for being considered a real estate professional. Their real estate losses were passive.

B. Section 6662

The brothers also contest the Commissioner's determination to impose an accuracy-related penalty under section 6662. The Commissioner gives two reasons to support his determination. The first is negligence. The regulation defines negligence as not making

> a reasonable attempt to comply with the provisions of
> the internal revenue laws or to exercise ordinary and
> reasonable care in the preparation of a tax return.
> "Negligence" also includes any failure by the taxpayer
> to keep adequate books and records or to substantiate

items properly. * * * Negligence is strongly indicated
where--

\* \* \* \* \* \* \*

(ii) A taxpayer fails to make a reasonable
attempt to ascertain the correctness of a
deduction * * * on a return which would seem
to a reasonable and prudent person to be "too
good to be true" under the circumstances;

Sec. 1.6662-3(b)(1), Income Tax Regs.

Our finding on reasonableness is strongly influenced by the
experience, knowledge, and education of the taxpayers involved.
See Pratt v. Commissioner, T.C. Memo. 2002-279.  Considering that
Ulysses worked as an IRS examiner, and his brother Kai was highly
educated and a long-time real estate investor, the Lees can
hardly argue that they made a reasonable attempt to comply with
the Code or exercise ordinary and reasonable care in preparing
their returns--either in picking a depreciable life for two of
the properties out of thin air, or in figuring out whether they
met the definition of real estate professional in section
469(c)(7) before they filed their returns.  Ulysses could have
easily sought advice on passive activities or the taxation of
rental activities from one of his colleagues if he didn't feel
confident in his own knowledge of the Code and regulations.  The
brothers--remarkably sophisticated in tax law and business, and
quite well educated--were also unable to point to any substantial
authority or evidence of good faith reliance on the advice of an

attorney or accountant.  Cf. <u>United States v. Boyle</u>, 469 U.S. 241, 251 (1985).

Section 6662(d)(1)(A) provides another ground for sustaining the penalty.  It penalizes a substantial understatement, defined as one that is the greater of ten percent of the tax required to be shown on the return or $5,000.  The understatements on the brothers' returns meet this definition for both years.  To reflect concessions and settlements on other issues, though,

<u>Decisions will be entered</u>

<u>under Rule 155</u>.